The next matter, number 25-1314, Crystal Czerno v. General Electric Company. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Good morning, Your Honors. William Jay for Appellant GE. I'd like to reserve three minutes for rebuttal, if I may. You may. Thank you, Your Honors. This case belongs in federal court for either of two reasons. One has to do with PCP use, and the other has to do with PCP remediation. Let me take the use piece first. GE acted under federal officers, the first part of the statutory test, because it was a government contractor producing fireproof electrical equipment, including Pyrenol, for the federal government to the federal government's specifications. And this complaint relates to those actions because the plaintiff's theory of the case is that producing the equipment that the government wanted violated state tort law. She explicitly argues in counts 3, 13, 6R, and 6Y that the use of PCPs was tortious. That's all the court needs to address to reverse the district court, but we have another theory having to do with remediation as well. On that theory, GE acted under federal officers because it voluntarily agreed to take on a task that the federal government would otherwise have had to do itself. And this complaint relates to those actions because, again, the complaint expressly alleges That would be the consent decree you're referring to? That's correct, Your Honor. The complaint expressly alleges that remediation was inadequate. Okay, but here the claim that plaintiffs have, they're not saying, you know, it's not an issue with a consent decree. It's an issue of dumping, and that's not in the consent decree. That's not in the government contract. The allegation is as to what is done outside of those matters. Respectfully, I disagree, Your Honor. There are three sets of allegations in the complaint, if I can put them into three buckets. One bucket has to do with use of PCBs. The second has to do with what Your Honor's question is about, disposal. And the third bucket has to do with remediation. And if you look at the claims, look at counts 3 and 13 in particular, which have to do with strict liability for product defect. That clearly has to do with not the disposal of the product, but the use of the product. And you look at the specific allegations, the allegation is that this is an unreasonably dangerous activity and that there is no justification for using or storing or maintaining PCBs at the Pittsfield site. So given the nature of the plaintiff's allegations, the district court simply got it wrong in stating that kind of the gravamen of the complaint has to do only with disposal. That's just not correct. But the court, even before it got there, the court misapplied the law on what it takes to act under a federal officer and made several pretty clear legal errors under this court's  And I think this very recent decision in Maine v. 3M really highlights that point. So I'd like to go through those errors one by one. You could either, I guess in your case, distinguish here this matter from the Express Scripts opinion issued by the court this past year. We think that the Express Scripts opinion supports removal in this case. Puerto Rico alleged that Express Scripts was doing work for both the government and private clients and that the work for the government didn't count for purposes of removal to federal court because of the way that Puerto Rico had structured its complaint. This court held that a plaintiff can't structure the complaint in that way to avoid the opportunity that the federal officer removal statute confers to have a federal defense litigated in federal court. So because the work that Express Scripts was performing was indistinguishable, in other words, it was performing work for federal client and for other private clients and those couldn't be disaggregated from each other. That's why the federal defense belongs in federal court because it was a colorable federal defense. The same thing in the... Counselor, if we disagree with your interpretation of the complaint and understand it as the manufacturer and production, what do you say to that? I hope you'll let me come back to why you shouldn't accept that premise, but on the premise of your question, even if this were just a complaint about disposal, it would still be removable and the district court's analysis would still be incorrect for several reasons. One is the district court got wrong what it takes to act under a federal officer. The district court applied case law that predates the 2011 amendments to the statute and it also applied a causal nexus test. None of that belongs in the acting under prong. As this court said in footnote three of the moor versus electric boat decision, it's generally quite straightforward for a government contractor producing military equipment to satisfy the under a requirement because they are providing something the government needs that the government would otherwise have to produce itself. I want to explore that line. I don't want to derail you from your other points, but while we're here, it strikes me that there's a continuum. You have on one end, the government is buying widgets that it needs for military purposes, let's say. On the other end of the continuum, you have specific design requirements for a naval warship. You've got those two ends at which you could have a government contract to purchase something for military purposes. Where in the line, where does the line fall? How specific does it need to get? If you're buying something off the shelf, I'd take it from your argument that you aren't saying that that would create a rising under jurisdiction, but how specific does the government have to be about what the item is like in order to create the rising under jurisdiction? I'm happy to answer your line drawing question. Let me just note at the outset that I think that we're really quite far to the removable end of that spectrum because of the products at issue in this case. We're not disagreeing with the point this court made in Puerto Rico versus Express Scripts that there may be some off-the-shelf purchases that are sufficiently arm's length that it doesn't look like a government contractor performing work under a federal officer. What the Supreme Court has said is that the key word there is under, and so that connotes some element of subordination or control. The government specifying what it wants, but I don't think that ... It's quite clear from this court's cases that the government doesn't have to specifically tell the contractor to do the thing that winds up being challenged in the tort suit. That's the second prong. You ask the related to question once we get past the question of whether this is a person that's acting under a federal officer. In this case, what we're dealing with is not widgets, as in your question. We're dealing with custom military industrial equipment. I think the Seventh Circuit got it exactly right in the Baker decision when it said that the idea of off-the-shelf doesn't really have any place in a case about industrial products. What GE was supplying was not just commodities, but transformers, for example, for naval warships. These are bespoke products. Were these only sold to the government? Was there a civilian counterpart? I don't want to say that GE didn't sell any transformers or capacitors to anyone else, but the PCBs that are the basis of our removal theory are PCBs used in work for the government. There was a period of time, as we've established in our papers, when 100% of the capacitor department at Pittsfield was doing work for the federal government for the war effort. Did the government want simply capacitors and transformers, or did it want purinol transformers specifically? Did they ever specify that they wanted that as opposed to something else that GE was making that wouldn't meet any flammability requirements or whatever it may have been? Let me break that down into a couple of steps. The government would often be asking for not just a capacitor or a transformer, but a turbine or gun emplacement or control equipment for a gun emplacement, larger military equipment of which the capacitor or transformer is a part. But a number of the orders do relate to transformers specifically. These are bespoke orders where the government specifies not just that they should be purinol transformers for the flammability, durability, lifetime, and weight advantages that that conferred, but they would specify other aspects of the transformer as well. I'm not saying that there doesn't exist any other transformer that's exactly like those transformers, but it's sort of like a bespoke suit or a wedding cake. It can be customized without being so unique that there is not another snowflake like it in the world. That is the type of product that we're talking about here. We are not talking about off-the-shelf products. It's important to understand that this is not just GE selling PCBs as a commodity as if it was just reselling the chemical that it received from Monsanto. This is using the PCBs in a customized blend for the equipment that the government specifically is ordering. And as your question recognized, Judge Dunlap, a number of the government orders specifically say purinol transformers. And our record evidence includes at page 763 from 1941, purinol transformers being added almost daily for the requirements of a naval air station in Rhode Island. Let me ask you, would you agree that you have two grounds for removal, the contractor or the consent decree? Would you agree that out of those two, the strongest ground for removal is the contractor one? Yes, I would, Your Honor, and you don't need to go past that. The second part of the question is, if you have a contractor, and as a contractor, you have a consent decree, it's still a contractor issue nonetheless. Even though you have a consent decree, but you're still a contractor, so you would still have removal under contractor. So I think that that's right, that we can have acted under a federal officer in two different ways, and all the court needs to decide is that we acted under in at least one way. And so this is a military contractor. That is a classic example of someone who acts under a federal officer. And let me also ask, let's assume we hold that removal is proper. The only thing, it's going to be a federal forum. If there was dumping or anything that was illegal, GE would still, again, I'm not asking for an admission, but GE still could, in theory, be responsible in federal court rather than state court. That's absolutely right. The most important aspect of federal officer removal is that it does not change liability. It just changes where the claim will be heard, because if there is a colorable federal defense, a federal officer or someone acting under a federal officer has a right to have that federal defense heard in federal court. And here, we have a number of colorable federal defenses. And this is just like in the main case and in the Puerto Rico versus Express Scripts case, where— I'm trying to say it 10 times in a row. —where the whole question is, if we are defending and saying that a portion of our liability is, for a portion of our liability, we have a defense based on our work for the agency, that is a defense that is entitled to be heard in federal court, even if it doesn't bar the entire corpus of the liability. That's the point of having one claim be enough for federal officer removal. Go ahead. Yeah, please go ahead. Just on the consent decree, what would you say—is there any piece of it that goes beyond what GE otherwise would have been required to do under the law to suggest that it's not simply complying with preexisting regulations? There is. I mean, the detailed specifications about what cleanup GE would do, I think, is part of it. So in other words, the government opted not to go—our brief sets out sort of the four ways that a government can operate under CERCLA. The third is sort of a mandatory order. And the fourth is a consent decree. And the difference—the government opted for the difference because it would get more benefit out of the work that GE did. But it's important to note the backstop. In the documents, you'll see that, I think, at page 536 to 537, the government—I'm sorry, at page 125, there's a provision of the consent decree called work takeover. If GE were not to carry out the work, the government would take over the work itself, including at the elementary school that is at the heart of the plaintiff's claims. And so I think that's what separates this from either a regulatory measure or even a garden variety consent decree, because the backdrop here is the government's responsibility, and that's expressly acknowledged in the consent decree itself. If I may just— Yeah, go ahead. And I'll ask the same question of opposing counsel. Do you think that we need to wait for the Chevron case to issue a decision here? Do you think that bears directly enough on the questions before us? Or what's your position on that? I think that it probably is sensible to do so, if I can elaborate on that for a moment, because at the time we filed our briefs, it appeared that the court had granted cert on two questions that arguably might not bear on the issues in this case. But if you look at how Louisiana has defended the judgment below in that case, Louisiana is making arguments about the acting under prong, and the parish is making arguments about the relating to prong. And it seemed from the oral argument that the court might well speak to either or both of them in its decision. So I could certainly see it being sensible for the court to wait. I do think that a number of the district court's errors in this case rest on law that I don't think is up for grabs in that case. But I could certainly see it being sensible for the court to wait. Unless the court has any further questions at this time? Not for now. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record again? May it please the court. Good morning, your honors. Tom Bosworth for appellees. The federal officer removal statute does not protect private companies that unilaterally decide to dump toxic chemicals and pollute their surrounding community because the materials that they've dumped happened to be part of a machine that the government at some time bought or sold. That's this case. And there is- So you're saying that whatever the government does pursuant to the contract, that's one thing. But what it does outside of that contract is another thing. Yes, your honor. And the inescapable fact here, which could never be disagreed by anybody, which I believe Thompson pointed out, is that if there was no dumping in this case, there would be no cause of action. And if I could briefly just talk about what happened. But it does seem like your complaint goes further than just about dumping. There's numerous allegations about use. There's strict liability counts. It strikes me as a little bit difficult. I don't see any express disclaimer of any claims relating to use, which the express scripts did have an express disclaimer. So sometimes what happens with these is everything's put into the complaint. And then for purposes of removal, you say, well, I didn't really mean use. Then when it goes back to state court, everything's back on the board unless you have a  So isn't that a significant problem for you here that you include allegations about use? I don't believe so, your honor. I certainly understand where you're coming from. But looking at the totality of the complaint is what I wanted to say to you all, I think is what would be required of all courts. Don't you have to break it down and look at it claim by claim as opposed to the entire kind of sense of the case? Certainly, your honor. But I think that given that this is a dumping case, and we do say the use is improper and negligent. We do. And that there was other stuff they could have used because that's true and part of what would be argued at a trial. However, at the end of the day, if GE doesn't go outside of their property and dump the chemicals in a schoolyard, we are not here today. And so there has to be some limit. And there has been limits imposed time and again by federal court after federal court after federal court that has not only addressed these toxic dumping cases, but also with specific regard to PCBs. And while certainly this court's not Counselor, one problem we're having here is that our case law talks about the plaintiff being the master of their complaint. And if it was strictly limited to dumping without language about breach of warranty or strict liability or anything like that, then it would be an easier case. But we can't ignore the language that's in the complaint because the defendant has a right to point to it in arguing removal. Yes, your honor. I don't think the court needs to nor should ignore those parts of the complaint because, of course, the complaint imposes liability for conduct acts or omissions that are actionable, that warrant a recovery of damages. So that's, I think, as far as the court needs to go with that. But when looking at the element of the statute here under 1442, acting under, that's the And repeatedly, federal courts have found that in dumping cases, the companies weren't acting under the government. Were those involving contracts? Some were, yes, your honor. I would point you to the Shell Oil case in this First Circuit, which is very, to your point, your honor, that was an oil case where they dumped in the First Circuit, and the same argument was made, and they did have a contract. They absolutely had federal contracts. And this court said, we don't care. I'm paraphrasing, of course. It doesn't matter because the contract has nothing to do with you all dumping the stuff everywhere. The government didn't mandate that. They didn't suggest it. They didn't even oversee it. And that's the line that's drawn by, essentially, every federal court to address these particular issues. And it's not coincidental that these, and I'm careful as a formal law clerk in the federal system to say no judge is compelled to do anything the other, aside from stare decisis, but I don't think it's coincidental that in these toxic torque cases, the dumping cases in the PCB context, it's just repeatedly, they're repeatedly remanded when it's dumping. And I think about Were those complaints more limited in their scope as to simply dumping and not including allegations? No, Your Honor. I mean, some may have been. But there were, in fact, others that were even more overreaching. Talking about remediation, I cite in my brief, a binding precedent regarding EPA orders, remediation orders, where that issue was also addressed in this context. And again, it gets remanded. And it's because this is about dumping. And I just wanted to point out briefly that, and perhaps this is silly, but I was thinking about on the way over here, that if Your Honor's federal officer of the federal branch told me, Tom, we want to get breakfast sandwiches, go get us breakfast sandwiches, and we want hot sauce, bring it back to us. And I went and followed Your Honor's instructions. And on the way back, I dumped hot sauce in the eyes of innocent bystanders. And I was then sued. I don't think that I could remove the case. But if I was riding my bike back and hit a bump, and the hot sauce fell out and hurt someone, I think that would be different. And I just would ask the court to consider the situation here, where you have a child in an elementary school playground that was polluted for decades, which in the conduct underlying that had nothing to do with any federal mandate, requirement, or order whatsoever. And so that's the end of the acting under prong. And the district court correctly concluded that GE could not establish that first prong and went no further. If we find against you on the acting under prong, can you win on the relating to prong? Yes, Your Honor. The conduct wasn't related to, the dumping wasn't related to what GE was asked to do. GE was asked to produce, to make transformers to go put in machines for the war. But is that bringing back a direct nexus test? What's that, Your Honor? Is that bringing back a direct nexus test? I don't believe it is. And I think if you look at the multiple cases I cite in my brief post-2011, this is another important point, is that I think I was accused of relying on pre-2011 cases before the enactment. And if, Your Honors, read my brief, it's just not true. There's case after case after case to your point where this nexus requirement is eliminated, and there's still the same conclusion by federal courts in the toxic dumping cases. They remand, remand, remand. Your Honors, this is a simple case, even though it may seem complex at first, because there is no way to avoid the fact that GE independently, unilaterally, consciously decided to take this liquid and dump it for decades all over the community and in the rivers. And just like in Shell Oil, none of that was mandated. None of that was ordered. And the district court correctly concluded that GE was not acting under. And the point on that that I think I just wanted to illustrate briefly is the text of the statute itself. I think I am guilty sometimes of getting lost in the case law. But I was reading the statute this morning, and this for or relating to clause is actually followed by very important language that Congress included, which is for or relating to any act under color of such office. Any act under color of such office. So even if it's for or relating, there still has to be an act under color of such office. And the act here of taking chemicals that may have been included in the machine, dumping them on private property, absolutely not done under color of any federal office whatsoever. So I'd ask this court to do what essentially every other federal court has done in a case like this and affirm the district court's remand to state court. I'm going to take you back to one question that I asked of opposing counsel as well. It goes back to the spectrum idea. Where do you think that, setting aside for the moment the dumping issue, if you look at the contract for the transformers, how do we draw the line between off the shelf and highly detailed Navy warship specifications? Where does it fall? Yes, Your Honor. I think excellent question. And I would point to, I think Justice Gorsuch commented during the oral argument, something like we could argue that we're all related to the Big Bang, but there have to be limits. And the way that I would like to ask the court to think about it would be when the conduct of the actor, in this case GE, is separable from the actual ask of the government. When the conduct is separable from the ask, I think that's maybe the simplest way. Here the ask was, please give us these machines. GE said, okay, you got it. And then separable from the ask took liquid that was like byproducts in the machine and dumped it and dumped it and dumped it and dumped it and dumped it. That isn't quite my question. I was saying, let's set aside the dumping issue. I understand your point on that. But just looking at the contract, the question here is kind of how much guidance, how much control does the government need to have over a contractor in order to get the acting under pro and satisfied? Yes, Your Honor. And I think you need to look no further than footnote three in the Moore case from this circuit where this circuit said that that typically involves, quote, subjection, guidance, or control. And I think to directly respond to Your Honor's point, if the contract would need to have had some comment on the disposal of the chemical, it would have to have for that to even be colorable here. But the contract did no such thing because the contracts here, to the extent they even existed, and I'll also note in the factual record, there wasn't an actual contract provided. But we all know that they gave, that there was these deals. There's nothing in the contracts themselves that say you must dispose of the chemical this way. You must not dispose of the chemical this way. So to use a reverse analogy, Your Honor, if this were a case involving, and you see a lot of these asbestos cases where the removal is upheld because asbestos is inherently a part of the process of whatever's going on with the worker just kind of going around and doing their thing. And so the courts have said, well, you know, they're doing their thing pursuant to the federal government. Here, it's apples and oranges, Your Honor. I thank Your Honors for your time, and I would ask you to affirm the district court's ruling which found that GE failed to establish the first element and you need not reach the other two elements. I'll just intervene with one more question, if I could.  Again, same question as to opposing counsel. Do you think that there is meaningful guidance that we need to wait for from the Chevron decision or not? No, Your Honor. Chevron was limited to the related to issue. I know counsel mentioned something colloquially about there may have been an overlap. My read of the opinion was it was related to the second prong, which this district court never reached. But irregardless, that case didn't, it wasn't a dumping case. It didn't involve the same issues here. So I think that this court can and should easily conclude that GE wasn't acting under the federal government when it unilaterally did what it did here. Thank you, Your Honors. Thank you. Three minutes rebuttal. Please reintroduce yourself on the record to begin. Thank you, Your Honors. William Jay again for the appellants. Let me begin, I think, Judge Dunlap with your question about where to draw the line. Opposing counsel gave you an answer that really is from the relating to bucket, and I think your question is getting at the acting under bucket. And it's important to understand just the way that statute separates those things. What the defendant does for the government is in the acting under prong. You don't look at the complaint in asking that question. You look at the complaint when we get to the second step, which is whether the allegations in the complaint relate to the work for the government. So I don't think that it can be a question of whether the challenged conduct is something that the government specified. I do think that the quote from the footnote is accurate, and there does have to be some degree of subjection or control. But I think that distinguishes an arm's length transaction. It doesn't require that the government be specifying everything down to every sort of jot and tittle. And the distinction between Watson, which is a regulatory case, and the acting under cases involving government contractors is just simply that the government wasn't buying the light cigarettes in Watson. It was specifying what the rules for selling light cigarettes on the open market would be. A word about... One question for you on shell oil. What do you do with shell oil? And maybe you're going there.  So not a dumping case at all. That is a climate tort suit primarily about advertising. And I think I just take this court at its word when it said it's important for one to remember what Rhode Island is alleging in its lawsuit. The allegations in the complaint were crucial in that case, including the carve out for what was called the NEXCOM contract, which was a contract to sell petroleum on military bases. In other words, the government bought gasoline from the oil companies, but it just turned around and sold it at the base gas stations to service members who wanted to fill up their cars. That looks a lot more like sort of a commodity. And in any event, it didn't matter because Rhode Island had carved that out of its complaint. I don't think that that helps opposing counsel one bit. It is not a dumping case. And just zooming out for a moment, the idea that all dumping cases or all PCB cases are the same just ignores the point that we were just talking about. What is the contractual relationship between the defendant and the government? Monsanto didn't have a contractual relationship with the government in most of these cases. And what is the allegation in the complaint? And in this case, just taking you back to counts 3 and 13 specifically, which eventually I think opposing counsel acknowledged, they said, I'm just quoting opposing counsel, we do say the use is improper and negligent. And there's other stuff they could have used. So in other words, their theory in the complaint is that when the government ordered for the war effort, pyranol transformers, GE should have said, no, Massachusetts law doesn't allow us to supply that to you. It's too dangerous. And that is exactly the kind of thing that gives rise to a colorable federal defense that must be heard in federal court. And to some of the outlandish hypotheticals that opposing counsel gave, may I just finish the thought? Please go ahead. That's what the colorable federal defense prong is for. So that if there is some outlandish frolic and detour, then maybe there won't be a colorable federal defense. But that has not been the case in this court's jurisprudence. And it is not the case here. Okay. Thank you, counsel. Thank you, Your Honor. That concludes the argument in this case. Call the final case.